**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ANA M. QUIRK**
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM LAMAR BASS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1109-CR-835 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-1011-FA-13

**February 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

William Lamar Bass appeals his convictions for Attempted Murder,[1] a class A felony, and Criminal Recklessness,[2] a class C felony. Bass presents the following restated issues for review:

1. Do Bass's convictions for attempted murder and criminal recklessness violate the double jeopardy clause in the Indiana Constitution, article 1, section 14?

2. Did the State present sufficient evidence to support his conviction for attempted murder?

We affirm.

The facts favorable to the convictions are that on the evening of October 13, 2010, Marrece Barnes was at his home when he received a phone call from Bass. He accused Barnes of telling people that Bass had broken into Barnes's home the prior week. Barnes denied making such statements, and Bass eventually ended the conversation stating that he was coming over to Barnes's home. Aware that Bass was usually armed, Barnes obtained his own handgun and put it in his pocket.

That same evening, Stacey Hinton and Brice Jones were visiting at Barnes's home. Jones and Barnes remained on the stoop near the front door as Hinton walked to his car to leave a little after 9:00. Hinton was parked on the other side of the street across from Barnes's home. About that time, Bass and his brother rounded the corner on the same side of the street as Hinton's car. Words were briefly exchanged between Barnes and Bass, and then Bass and his brother drew their guns and split up. Bass approached Hinton, who was in the

[1] Ind. Code Ann. § 35-41-5-1 (West, Westlaw through 2011 1st Regular Sess.) (attempt statute); Ind. Code Ann. § 35-42-1-1 (West, Westlaw through 2011 1st Regular Sess.) (murder statute).

[2] I.C. § 35-42-2-2 (West, Westlaw through 2011 1st Regular Sess.).

middle of the street, and Bass's brother went towards Barnes's home. Bass and his brother ordered the three men to the ground.

Hinton pleaded with Bass that he had nothing, but Bass continued to approach with his gun pointed at Hinton. Bass then began shooting at the unarmed Hinton from about four to five feet away. Bass shot at him about ten times as Hinton struggled to get away between his car and another. Hinton was hit by two bullets and sustained life-threatening wounds.

In the meantime, Bass's brother had moved quickly across the street toward Barnes and Jones. Barnes initially started going to the ground as demanded, but then drew his weapon and shot all five rounds. Bass's brother returned fire as Barnes and Jones fled down the side of the house.

Immediately thereafter, Bass and his brother met up at the corner across from Barnes's house and reloaded their guns. They then walked across the street toward Barnes's home and emptied their clips out on the house. Before leaving, Barnes warned, "we'll be back" and "this ain't over with". *Transcript* at 137.

The State charged Bass with class A felony attempted murder, class C felony criminal recklessness, and class A misdemeanor carrying a handgun without a license. Following a jury trial, Bass was convicted as charged on July 26, 2011. On appeal, Bass challenges only his felony convictions.

1.

Bass initially argues that his criminal recklessness conviction must be vacated pursuant to article 1, section 14 of the Indiana Constitution. Specifically, he contends that there is a reasonable possibility that the evidentiary facts used by the jury to establish the

3

essential element of attempted murder may also have been used to establish the essential elements of criminal recklessness.

Our Supreme Court has established a two-part test for analyzing state double jeopardy claims. According to that test, multiple offenses are the same offense in violation of article 1, section 14, "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Bass raises his claim under the actual evidence test. Thus, we must determine whether there is a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one offense may also have been used to establish all of the essential elements of the other offense. *See Davis v. State*, 770 N.E.2d 319 (Ind. 2002); *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002) ("the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all*, of the essential elements of a second offense") (emphasis in original).

There is no merit to Bass's double jeopardy claim, as the State clearly used separate evidentiary facts to establish each offense. The attempted murder charge was based upon Bass's initial actions of walking toward Hinton and firing a handgun directly at him multiple times, striking him twice. On the other hand, the criminal recklessness charge was based upon Bass's subsequent act of reloading his handgun and firing, alongside his brother, toward Barnes's home (which was separate from and in the opposite direction of where he

4

shot Hinton).[3]  We find no double jeopardy violation here.

2.

Bass also challenges the sufficiency of the evidence supporting his attempted murder conviction.  While Bass admits carrying and shooting a 9mm handgun on the night in question, he directs us to conflicting testimony regarding the shooting and to evidence concerning the location of the twenty-four shell casings found at the scene.  Based upon this evidence, Bass claims:  "What actually happened was that Stacey Hinton got caught in the cross-fire of the bullets fired between Mareece [sic] Barnes, William Bass and Jamar Bass." *Appellant's Brief* at 14.  Thus, he claims the State failed to establish that he had the specific intent to kill Hinton.

> Our standard of review for challenges to the sufficiency of the evidence is well settled.
>
> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008).  "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.*  We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

The basis of Bass's defense at trial was that Barnes was the first to shoot and that Bass and his brother only returned fire in self-defense.  Further, Bass claimed that Hinton, whom

---

[3]  Contrary to Bass's specious argument on appeal, the State was not required to establish which bullet from which gun (Bass's or his brother's) actually hit Barnes's residence in order to avoid double jeopardy.

Bass admitted was unarmed, was unfortunately caught in the crossfire. The jury rejected Bass's self-serving testimony and theory of defense, which was their prerogative. The jury's determination was based upon ample evidence in the record. Most notably, Hinton testified that Bass was walking toward him and shooting directly at him. Further, an independent eyewitness[4] testified that when Bass and his brother split up, Bass went immediately toward Hinton. According to the witness, "[Hinton] hit the ground, and [Bass] continuously kept walking toward him, shooting." *Transcript* at 131. Bass was within four or five feet of Hinton and shooting "directly at him." *Id*. at 135.

We reject Bass's blatant request for us to reweigh the evidence and judge witness credibility. The State presented sufficient evidence to support the attempted murder conviction.

Judgment affirmed.

RILEY, J., and MATHIAS, J., concur.

---

[4] The witness lived two houses down from Barnes's residence and was able to observe Bass and his brother during the entire encounter.